On Rehearing.
(Jan. 18, 1904.)
NICHOLLS, O. J.
We see no reason to change our opinion that the injury was due to the negligence of the sawyer. He was near, and directly facing, the plaintiff when he went to detach the bark upon the logs upon the carriage, and it was his duty to have made certain that he had withdrawn from and got beyond the danger point before he himself started the saw “nigger” to turn the log. There is a conflict of testimony as to whether or not the plaintiff was still holding up his hand to serve as a signal to the sawyer not to “move the ‘nigger,’ ” but the district judge decided that fact in favor of plaintiff’s contention, and we cannot say he erred.
Counsel of the defendant say that in the opinion heretofore rendered we quoted and laid some stress upon the clause of article 2320 declaring that “masters and _ employees are answerable for the damage occasioned by their servants and overseers in the exercise of the functions in which they are employed,” but that we failed -to refer to the concluding clause of the same article to the effect that “in the above cases responsibility only attaches when the masters or employees might have prevented the act which caused the damage, but have not done so”; that that iz a very important limitation on the masters’ *543 liability, not recognized by the common law. They call particular attention to the fact that it was not recognized in the French law, and contend that article 1384 of the French Code confines that limitation to parents, teachers, and artisans, and not extending it to masters and employes; and it thus appears that the law of Louisiana imposes greater restrictions on the liability of masters than either the English or French law.
That, while this limitation had been held to be practically ineffective in cases of injury to third persons by the fault of corporate servants, it certainly should be applied in the case of fellow servants, because’ the very reason of the fellow-servant rule was the impossibility of the master’s preventing negligence in his servants, as illustrated by the decision in the Baugh Case, 149 U. S. 410, 13 Sup. Ct. 914, 37 L. Ed. 772.
We did not allude to the clause of the article which counsel refer to for the reason that under the jurisprudence of the state fixed by a number of decisions, the last of which was rendered as late as 1897 in Nelson v. Crescent City Railroad Co., 49 La. Ann. 491, 21 South. 635, that clause had no influence upon the rights and obligations of the parties.
When corporations undertake to engage in dangerous occupations they assume certain primary obligations to secure the safety not only of “strangers,” but of parties with whom they hold contract relations. From the circumstance that they are intellectual beings, and cannot personally transact the business they have the legal right to do, it becomes necessary that they should intrust to others the direction and care of their affairs, whose acts of administration in their respective spheres are supposed to be the acts of the corporation, and bind them.
The number of these parties and the particular duties to be assigned to each vary according to circumstances, but the fact which controls the situation in each case is that the persons who are to be so intrusted must, as to number and assignment to duty, come up to the legal standard and test as to what is required for the purposes of safety. Each different specially dangerous appliance requiring peculiar skill and knowledge for its safe operation should be placed for its direction and care in charge of a particular person, whose acts quoad the operation of that appliance are supposed to be the act of the corporation, and bind it.
A corporation engaged in the operation of a sawmill is conducting a hazardous business. There are about, the mill separate parts specially dangerous in their operation, which one single man intrusted with general supervision of the whole cannot possibly properly direct and control personally. The same reason which made it incumbent and necessary for the corporation to employ a man and place him in general charge would make it incumbent upon and necessary for the corporation to employ others to take charge of these specially dangerous appliances, who, like him, would represent the corporation in respect to the administration of the things intrusted to them. The sawyer in charge in a mill occupies the most responsible position in the establishment. He is one whose administration is fraught with constant danger to the subordinate workers around the carriage. He and those subordinates are not placed on a plane of equality and reciprocity in respect to risks and dangers resulting from their acts in the performance of their work. There is no one in the building whose acts should more directly be held to be acts of the corporation, and no one for whose acts the corporation should be held more strictly responsible.
The plaintiff in this case is shown to have been to the knowledge of' the foreman of the mill an inexperienced slow and clumsy man. The foreman had been warned by reason of that fact not to employ him at the “log deck,” a place requiring much less experience fr;m laborers engaged about it than was required from those at the saw carriage.
We do not say that it was a “fault” per se to have sent him to work at the latter place. It is unavoidable that the men of that kind should sometimes be employed in dangerous places, for experienced workmen are necessarily workmen who have passed forward in safety from a condition at one time of inexperience. It is, however, the duty of a corporation, when it does employ inexperienced men and place them in dangerous places directly under others having control and direction of dangerous appliances, to give the latter notice of the fact of such inexperience, and to caution them as to the necessity of exercising special caution towards insuring their safety. There is no evidence of the saw *545 yer having in this case received such notice and warning from the foreman in charge, and, if such notice and warning were in fact given, they were disregarded.
We find no good ground for altering the judgment heretofore rendered in this case, and it must be, and is hereby, decreed to remain in full force.